OPINION OF THE COURT
Kaye, J.
Where a written agreement between sophisticated, counseled businessmen is unambiguous on its face, one party cannot defeat summary judgment by a conclusory assertion that, owing to mutual mistake or fraud, the writing did not express his own understanding of the oral agreement reached during negotiations.
The facts are largely uncontested. Defendant, David L. Paul, a businessman and financier, was president of AmMart, one of two general partnerships that collectively owned 666 Associates, an Illinois limited partnership whose sole business was the ownership and operation of a building in Chicago. In 1980 AmMart proposed making major improvements to the building, requiring additional capital. Because the other general partner did not wish to participate, Paul and AmMart set out to find new partners and restructure 666 Associates.
To this end, Paul and AmMart located new limited partners who would purchase interests in 666 Associates for $170,000 per percentage point. One of these new limited partners was plaintiff, Chimart Associates. According to Paul’s affidavit, he negotiated with Chimart and its attorneys between July 1980 and November 20, 1980, when the deal closed and Chimart purchased a 22% interest for a total of $3,740,000. At the closing, the parties executed a number of documents, including a 27-page amended and restated limited partnership agreement. Central to this suit, however, is a two-page letter agreement, also dated November 20, 1980 and executed at the closing, from Paul to Chimart, in care of its attorneys, containing the following paragraph: "In order to induce you [Chimart] to purchase the Interest, and subject to your assignment to me [Paul] of your right to receive certain cash *572 distributions from the Partnership, as described below, I agree to pay you, on November 23, 1982, the amount, if any, by which (A) $1,320,000 exceeds (B) the sum of the cash distributions to you from the Partnership on account of the Interest through November 20, 1982 (such amount being the 'Guarantee Payment’). If a Guarantee Payment is not paid on or before November 23, 1982, I also agree to pay interest on such Guarantee Payment from November 23, 1980 to the date such payment is actually made, at a rate per annum equal to the prime rate charged from timé to time by Chemical Bank for 90-day unsecured loans to commercial borrowers of the highest credit rating plus one percent.” The letter agreement was drafted by Chimart’s attorneys.
As of November 23, 1982, Chimart had received no cash distributions from 666 Associates, and Paul refused to make the "Guarantee Payment” under the letter agreement. In June 1983, Chimart sued Paul to collect $1,320,000 plus interest and, after Paul answered, in August 1983 moved for summary judgment on the ground that the language in the letter was unambiguous.
Paul opposed the motion. Arguing that the language of the agreement was ambiguous and that paroi evidence was therefore admissible, Paul submitted an affidavit in which he swore that he had not read the letter agreement before he signed it, but that he believed, based upon conversations with Chimart during the negotiations, that he had an obligation only to pay interest on any unpaid amount until 666 Associates made the distribution. In addition, Paul cross-moved to amend his answer to assert an additional affirmative defense of fraud and/ or mutual mistake, and a counterclaim to reform the letter agreement on that ground.
Special Term denied Chimart’s motion for summary judgment and granted Paul’s cross motion because "it is apparent that the parties are in fundamental disagreement concerning the meaning and interpretations of their letter agreement. * * * This dispute must be resolved at trial.” Chimart appealed from so much of the order as denied its motion for summary judgment, and a unanimous Appellate Division reversed and granted the motion on the ground that the provision was unambiguous. We now affirm.
As we said in Teitelbaum Holdings v Gold (48 NY2d 51, 56), "[interpretation of an unambiguous contract provision is a function for the court, and matters extrinsic to the agreement *573 may not be considered when the intent of the parties can be gleaned from the face of the instrument.” Indeed, Paul does not dispute that we should determine if there is any ambiguity by the contractual language alone, without reference to extrinsic evidence. The initial question, then, is whether the agreement on its face is reasonably susceptible of more than one interpretation.
It is not. Paul argues that ambiguity appears on the face of the agreement in that the second sentence suggests that he need only pay interest on any sums not paid by 666 Associates, but the provision does not reasonably admit of such an interpretation. The language plainly imposes an undertaking both to make the "Guarantee Payment” and to pay interest on a late payment. Moreover, Paul’s interpretation would render superfluous the first sentence of the paragraph in which he unconditionally agreed to make the "Guarantee Payment”, and would allow him the option of always simply paying interest.
Nor does Paul’s claim of mutual mistake or fraud warrant a trial on his counterclaim for reformation.
In the proper circumstances, mutual mistake or fraud may furnish the basis for reforming a written agreement. Indeed, the concepts are closely related. In a case of mutual mistake, the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement (see, Harris v Uhlendorf, 24 NY2d 463; Hart v Blabey, 287 NY 257). In a case of fraud, the parties have reached agreement and, unknown to one party but known to the other (who has misled the first), the subsequent writing does not properly express that agreement (see, Barash v Pennsylvania Term. Real Estate Corp., 26 NY2d 77, 86; Welles v Yates, 44 NY 525).
Because the thrust of a reformation claim is that a writing does not set forth the actual agreement of the parties, generally neither the paroi evidence rule nor the Statute of Frauds applies to bar proof, in the form of paroi or extrinsic evidence, of the claimed agreement (see, Brandwein v Provident Mut. Life Ins. Co., 3 NY2d 491, 496; but see, Friedman & Co. v Newman, 255 NY 340). However, this obviously recreates the very danger against which the paroi evidence rule and Statute of Frauds were supposed to protect — the danger that a party, having agreed to a written contract that turns out to be disadvantageous, will falsely claim the existence of a different, oral contract (see, Backer Mgt. Corp. v Acme Quilting Co., 46 *574 NY2d 211, 219). To this end — "for freedom to contract would not long survive courts’ ready remaking of contracts that parties have agreed upon” (id.) — reformation has been limited both substantively and procedurally. Substantively, for example, reformation based upon mistake is not available where the parties purposely contract based upon uncertain or contingent events (Sears v Grand Lodge, 163 NY 374, 378).
Procedurally, there is a "heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties” (Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 219, supra), and a correspondingly high order of evidence is required to overcome that presumption. (Id., at pp 219-220; see also, 3 Corbin, Contracts § 615, at 745-746.) The proponent of reformation must "show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties” (Backer Mgt. Corp. v Acme Quilting Co., at p 219, supra).
For the same reasons, we have required a party resisting pretrial dismissal of a reformation claim to tender a "high level” of proof in evidentiary form (Sagan v Sagan, 53 NY2d 635, 637). "Only thus can the benefits of the written form be preserved” (3 Corbin, Contracts § 607, at 659-660). Thus, in Backer (46 NY2d 211, supra), summary judgment was granted dismissing a reformation claim because "[a]s a matter of law, no showing free of contradiction or equivocation [came] through from the affidavits submitted” in opposition to the motion (46 NY2d, at p 220). It was uncontroverted that the negotiations had been conducted by sophisticated, counseled businessmen, and the undisputed evidence showed that the unambiguous language reflected precisely what the moving party intended. Various statements allegedly made during negotiations were, as a matter of law, too indefinite to form the basis for a claim of misrepresentation.
Backer dictates an affirmance here. First, the contract at issue is part of a multimillion dollar transaction involving sophisticated, counseled parties dealing at arm’s length (cf. Citibank v Plapinger, 66 NY2d 90, 95). Second, the language of the agreement was plain and unambiguous, and by Paul’s own admission he failed to read the agreement. Crucially, there is no unequivocal evidence of mutual mistake or fraud.
As to mutual mistake, Paul sets forth no basis for his contention that both parties reached an agreement other than that contained in the writing. His affidavit contains no specific *575 claim that both parties agreed that Paul could pay only interest and in fact strongly suggests that the mistake was not mutual. The affidavit of Chimart’s attorney, by contrast, squarely addresses the point: "Whether or not defendant signed the Agreement under such a mistaken impression, I can state categorically that Chimart did not labor under the same mistaken impression. As noted above, I played a key role in helping Chimart to negotiate the Agreement. I therefore have direct knowledge of the facts to which I am testifying. Without doubt, the Agreement’s words reflected exactly what I intended them to reflect. Otherwise, Chimart would not have signed the Agreement. There could have been no mistake on the part of Chimart, because the words of the Agreement are plain and unambiguous.” Under such circumstances, Paul was required — and failed — to come forward with something more than his own conclusory assertion that mistake existed.
Paul’s alternative claim of fraud fails for much the same reason. In Backer (supra), the party seeking reformation set forth a particular misrepresentation supposedly made by the other party’s agent, yet the representation was not sufficiently definite to support a claim of reliance. Paul’s allegation of fraud — "Chimart fraudulently misrepresented to me at the closing the Agreement’s contents and effect” — is, a fortiori, too uncertain and conclusory to defeat summary judgment in favor of Chimart.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Meyer, Simons, Alexander, Titone and Hancock, Jr., concur.
On review of submissions pursuant to section 500.4 of the Rules of the Court of Appeals (22 NYCRR 500.4), order affirmed, with costs.