INVESTORS INSURANCE COMPANY
OF AMERICA, Plaintiff,

v.

DORINCO REINSURANCE
COMPANY, Defendant.

No. 88 Civ. 3969 (SWK).

United States District Court,
S.D. New York.

March 14, 1990.

Wilson, Elser, Moskowitz & Delman by Edward J. Boyle and Bernard C. Byrnes, New York City, for plaintiff.

Bickford, Hahn & Hayes by Peter H. Bickford and Richard Hahn, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This diversity action alleges a claim in breach of contract and one for reformation of the contract. Presently before this Court are the cross motions for summary judgment by the plaintiff and defendant, Fed.R.Civ.P. 56, as well as defendant's motion for sanctions pursuant to Fed.R.Civ.P. 11 and 56(g).

## BACKGROUND [1]

In October 1986, the plaintiff, Investors Insurance Company of America ("Investors") agreed to buy the Dorinco Syndicate Corporation (the "Dorinco Syndicate") from the defendant Dorinco Reinsurance Corporation for $2,908,395, which represented the asset value of the company. The Dorinco Syndicate had been a wholly owned subsidiary of defendant and was in the insurance business. It was also a member of the New York Insurance Exchange ("Exchange"), which was an insurance market established under Article 62 of the New York Insurance Law ("NYIL") for the purpose of providing a facility for the underwriting of reinsurance of all kinds and certain direct insurance. NYIL § 6201 (McKinneys' 1985).

The agreement entered into by the parties included an indemnity clause, which is the basis of the instant action. Section 6.06 of the agreement, entitled "Assumption of Liability for Certain Insolvencies," generally states that "Dorinco agrees to indemnify Investors for a certain proportion of the insolvencies of syndicates on the Exchange that result in diminution of the Security Fund." Agreement § 6.06, attached to Defendant's Exhibit C. The Exchange's Security Fund was created, *inter alia,* " . . . to assist in the detection and the prevention of insolvencies . . ." of the underwriting members of the Exchange. Defendant's 3(g) in Support of Its Motion at ¶ 7.

The Security Fund has two components, the Deposit Fund and the Surcharge Fund, which together are considered the "Aggregate Fund" of the Security Fund. Exchange Constitution, Article XIII, § 2. The Exchange's Constitution requires all of its members to become Security Fund members and to deposit $500,000 into a bank in trust for the benefit of the Deposit Fund. Article XIII, § 5 provides that the Exchange shall levy a surcharge on premiums on policies written by the members in order to further the financial strength of the Security Fund. Article XIII, § 7(A) prioritizes the funds, stating that expenditures from the Security Fund are to come first from the Surcharge Fund to the fullest extent possible, and then, states

> In the event that the Board of Directors determines that the Surcharge Fund is, or is likely to be, insufficient to satisfy the obligations of the Security Fund it shall notify the Exchange and the bank or trust company, if any, holding the Deposit Fund, to transfer from the Deposit Fund to the Security Fund . . . as it deems necessary or appropriate to reasonably assure that the Security Fund will be able to meet its obligations.

Article XIII, § 7(a), attached as Defendant's Exhibit D.

The Board of Directors of the Security Fund determined on September 2, 1987 that the Surcharge Fund was inadequate to satisfy the Security Fund's obligations, and the Board called down the Deposit Fund pursuant to section 7(a) of Article XIII. Dorinco indemnified Investors for the diminution of the Dorinco Syndicate's Initial Deposit. In response, on or about February 24, 1988, Dorinco advised Investors that, according to Dorinco's interpretation of the writing embodying their agreement, no indemnification was due or owing by Dorinco because the corporate entity known as the NYIE Security Fund, Inc. had suffered no "actual diminution" by the draw down of the Deposit Fund. Dorinco has refused to reform the indemnification claims and has not indemnified Investors.

## DISCUSSION

### Standards for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold,*

---

1. The facts are drawn from the statements submitted pursuant to local rule 3(g).

*Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[2] The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Rule 56(e). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement).

**2.** The moving party may rely on the evidence in the record to point out the absence of genuine issues of material fact. *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2552. The moving party does not have the burden of providing evidence to negate the non-moving party's claims. *Id.* As the Supreme Court recently noted, "whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

**3.** The Agreement specifies that it shall be construed under New York law. Agreement § 11.04.

**4.** Section 6.06 further provides a formula for ascertaining exact liability, *see* Agreement § 6.06(a), while it limits indemnification only to liability due to insolvencies of members of the Exchange as of the Closing date, *see* Agreement

## Count One: Breach of Contract

■ Count one asserts a claim for breach of contract arising from defendant's refusal to reimburse plaintiff under § 6.06 of the agreement following the transfer of $500,000 from plaintiff's Deposit Fund account to the Security Fund on September 3, 1987.[3] Complaint ¶ 12. The viability of this count turns on whether or not the terms of Section 6.06 apply to a transfer of funds out of the Deposit Fund to the Security Fund itself, without an actual disbursement of funds from the Security Fund. This indemnity provision clearly refers to liability for a portion of actual diminutions of the Security Fund, as it states:

... Dorinco agrees to indemnify Investors for a certain proportion of the insolvencies of syndicates on the Exchange that result in *diminution of the Security Fund.*

Agreement § 6.06 (emphasis added).[4]

Defendant argues that the indemnity clause, section 6.06, is the parties' final negotiated agreement with respect to indemnification, and that it was not triggered by the transfer or draw down of funds from the Deposit Fund. Frank A. Petitti, the President of defendant, stated

... the Agreement was negotiated at arms length between sophisticated business people who were represented by counsel at all stages of the negotiations.

§ 6.06(b), and to diminutions of the Security Fund which occur on or prior to December 31, 1988. *See* Agreement § 6.06(c). The liability formula in section 6.06 also refers to a diminution of the Security Fund in three places:

(a) Dorinco agrees to indemnify Investors only for the insolvency of a member of the Exchange that results in the *actual diminution of the Security Fund* and then only for Investor's proportion of that diminution, determined according to the following formulae:

(i) D [divided by] F = PD; and

(ii) PD × $500,000 = I

but in no event to exceed $500,000 in the aggregate, where "D" means the actual amount of the *diminution of the Security Fund,* "F" means the actual amount contained in the *Security Fund at the time of the diminution,* "PD" means Investor's proportionate share of the diminution of the Security Fund and "I" means the amount which Dorinco must indemnify Investors.

Agreement § 6.06(a) (emphases added).

Section 6.06 of the Agreement was discussed by the parties for several hours during the negotiations as well as by telephone. Investors, of course wanted Dorinco to give a broad indemnity. Naturally, we wanted to limit the indemnity as much as possible. The result of the negotiations was § 6.06 of the Agreement which fully and accurately reflects the bargain reached at the conclusion of the negotiations.

Declaration of Frank Petitti in Opposition at ¶ 16. Defendant takes the position that no actual diminution of the Security Fund was caused by the insolvency of any underwriting member, and that the action of the Security Fund's Board "was merely a transfer from one account to another." Declaration of Frank Petitti in Support at ¶ 14.

In support of plaintiff's summary judgment motion, one of its directors, William H. Browne, testified by affidavit that the obvious purpose of the indemnification clause supports its construction to include the transaction here at issue. *See* Affidavit of William H. Browne in Support. Browne testified that Investors wanted a seat on the New York Insurance Exchange, and that the structuring of the acquisition of Dorinco—including the indemnification clause as interpreted by plaintiff—made the purchase of Dorinco more advantageous than their other option, which was to obtain a new seat on the exchange. *Id.* at ¶ 11.

The defendant has responded to this argument by relying on the agreement's integration clause, and the limitations placed on this Court by the parol evidence rule. According to section 11.07 of the agreement, entitled *"Complete Agreement,"*

[t]his Agreement, including the documents and other writing referred to herein or delivered pursuant hereto, contains the entire understanding of the parties with respect to its subject matter. There are no restrictions, agreements, promises, warranties, covenants or undertakings among the parties other than

those expressly set forth herein or therein with respect to any matter. This Agreement supersedes all prior agreements and understandings, both written and oral, among the parties.

Agreement § 11.07, attached as Defendant's Exhibit C. This Court notes that the Agreement defined "Security Fund" as meaning "the NYIE Security Fund, established pursuant to Article XIII of the Constitution of the Exchange." Agreement at § 1.01. Therefore, Article XIII of the Constitution of the Exchange represents "a writing referred to herein," according to the integration clause. As such, Article XIII and its definitions of Security Fund, Deposit Fund and Surplus Fund were incorporated into the Agreement.

The parol evidence rule precludes the introduction of extrinsic evidence to interpret a contract that is complete, unambiguous, and otherwise valid. *See, e.g., Wallace Steel, Inc. v. Ingersoll–Rand Co.,* 739 F.2d 112 (2d Cir.1984); *Bankers Trust Company v. Stahl,* 145 A.D.2d 311, 534 N.Y.S.2d 979 (1st Dept.1988). In this action, the parties included an integration clause in their Agreement. Therefore, their indemnity clause is expressly limited to actual diminution of the Security Fund, not the Deposit Fund. The indemnity clause on its face would not apply to funds that remain in the Security Fund, even though they were transferred out of the Deposit Fund. While the transfer reduced the amount of Investors's capital by reducing the amount of its funds in the Deposit Fund, it did not result in any actual diminution or disbursement of funds by the Security Fund. As the contract is drawn, and as the separate funds are defined in the referenced Exchange Constitution, the indemnity clause would not trigger liability for Dorinco on the transfer. Plaintiff has failed to come forward with any evidence that a diminution of the Security Fund occurred.[5] There is no genuine issue with regard to whether the indemnity clause, as drawn, was breached by defendant's refus-

---

5. An actual diminution or disbursement from the Security Fund would trigger the indemnification clause as long as its other conditions were met.

**1264**

al to indemnify. Count one is therefore dismissed.

Count Two: Reformation of the Agreement

■ Plaintiff further seeks reformation of section 6.06 of the Agreement to substitute "Deposit Fund" for "Security Fund." Under New York law, written contracts that do not represent the parties' agreement may be reformed. *See Chimart Associates v. Paul*, 66 N.Y.2d 570, 498 N.Y.S.2d 344, 489 N.E.2d 231 (1986). There are two grounds for such a reformation: either unilateral mistake coupled with fraud, or mutual mistake. *Id.* 498 N.Y.S.2d at 347, 489 N.E.2d at 234.

■ Neither the statute of frauds nor the parol evidence rule bars parol or extrinsic evidence of the claimed agreement with regard to a reformation claim. *Chimart Associates, supra*, 498 N.Y.S.2d at 347, 489 N.E.2d at 234 (citing *Brandwein v. Provident Mutual Life Insurance Co.*, 3 N.Y.2d 491, 496, 168 N.Y.S.2d 964, 146 N.E.2d 693 (1957)). Because these limitations on contract interpretation are lifted, the New York Court of Appeals recognized that "this obviously recreates the very danger against which the parol evidence rule and Statute of Frauds were supposed to protect—the danger that a party, having agreed to a written contract that turns out to be disadvantageous, will falsely claim the existence of a different, oral contract." *Id.* (citing *Backer Mgt. Corp. v. Acme Quilting Co.*, 46 N.Y.2d 211, 219, 413 N.Y.S.2d 135, 385 N.E.2d 1062 (1978)). In response to this danger, New York law procedurally places a

> 'heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties,' and a correspondingly high order of evidence is required to overcome that presumption.

*Chimart Associates, supra*, 498 N.Y.S.2d at 347, 489 N.E.2d at 234 (citations omitted). Plaintiff carries a higher evidentiary burden to "show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." *See Backer Mgt. Corp., su-*

*pra*, 46 N.Y.2d 211, 219, 413 N.Y.S.2d 135, 385 N.E.2d 1062 (1978); *Mantek Services, Inc. v. Rye Office Associates*, 149 A.D.2d 671, 540 N.Y.S.2d 311, 312 (2d Dept.1989). This Court considers whether the plaintiff has met this burden with respect to either unilateral and mutual mistake.

*1. Unilateral Mistake*

■ Plaintiff's claim for reformation because of unilateral mistake is flawed because the complaint is devoid of any allegations that defendant knowingly misled plaintiff into believing that the indemnity clause, as drawn, would include the transfer at issue. *See* Complaint ¶ 23. Additionally, plaintiff's director and witness, William Browne, conceded in his deposition that he knew of no actual acts of fraud or misrepresentation by defendant or its agents at the time the agreement was reached. Browne Deposition at 91, lines 21–23. Instead, plaintiff now bases its reformation claim on mutual mistake. Given the absence of any specific allegations of fraud in the complaint or the submissions before this Court, plaintiff has not satisfied its burden of production to create a genuine issue with respect to unilateral mistake. Consequently, allegations of unilateral mistake in count two are dismissed.

*2. Mutual Mistake*

■ After carefully considering the affidavits before this Court and drawing all reasonable inferences against the movants, this Court concludes that no genuine, material issue exists on the question of whether there are grounds for mutual mistake. The affidavit of plaintiff's director, William Browne, generally alleges that the indemnification clause is inconsistent with the purpose of the agreement, and that the presence of mutual mistake is apparent once the Court understands the plaintiff's purpose in entering the transaction. Browne testifies that his corporation's purpose in entering the Agreement was to obtain a seat on the New York Insurance Exchange. To achieve this objective, the plaintiff contends that the transaction was structured as a "dollar-for-dollar" exchange of assets through which Investors would obtain a

"clean shell" holding a seat on the Exchange. Browne testified that this dollar-for-dollar exchange meant that Dorinco sold the Dorinco Syndicate to plaintiff for $2,908,395.00, which represented the value of the securities that constituted the sole assets of Dorinco. Affidavit of William H. Browne at ¶ 3. Thus, the plaintiff contends that the indemnification agreement was intended to cover any diminution of the defendant's assets in the Deposit Fund, not merely a diminution from the Security Fund.

Browne asserted that Investors' purchase of Dorinco Syndicate was based on pragmatic considerations such that it was less expensive to buy Dorinco Syndicate, as valued by its assets, than it would have been to start another syndicate from scratch.[6] Browne Affidavit at ¶ 10. As $500,000 of Dorinco Syndicate's assets were placed in the Deposit Fund portion of the Security Fund, plaintiff contends that the parties agreed to an indemnification agreement under which defendant would be liable to plaintiff for a portion of these funds diminished from the Security Fund before December 31, 1988. Since the funds in question were drawn down from the Deposit Fund before that date, but remained in the Security Fund, the plaintiff lost these funds as assets without actually triggering the indemnity agreement as written. Plaintiff also relies on defendant's admission that the negotiated value of Dorinco Syndicate was based on its asset value, including the $500,000 in the Deposit Fund. Nevertheless, this admission does not itself suggest that the extensively negotiated indemnity clause was intended to apply to actual diminution of the Deposit Fund as opposed to the Security Fund.

Defendant's president alleges in opposition that he never heard the term "dollar for dollar" exchange of assets, and that he does not remember anyone stating specifically why plaintiff wanted to purchase the

syndicate. Affidavit of Frank A. Petitti at ¶¶ 9, 10. According to Mr. Petitti, "there never was any discussion at any meeting I attended, nor during any telephone conversations I participated in, nor at the closing at which I signed the Agreement, to the effect that Dorinco would be liable under the indemnity if there were a call down of the Deposit Fund by the Security Fund." Petitti Affidavit at 14. On the question of defendant's intent, Petitti states

all that Dorinco ever intended or agreed to was to indemnify Investors for a certain portion of any actual diminution in the Security Fund caused by the insolvency of members of the Exchange occurring prior to or on December 31, 1988. This is exactly what is stated in § 6.06 of the Agreement.

*Id.* at ¶ 14. The Court cannot reform a contract based on mutual mistake without a showing that both parties actually intended that the indemnity clause apply to a draw down of the Deposit Fund. Defendant has provided uncontradicted testimony that its intent was to enter into the indemnity agreement as written.

In further support, Defendant cites the deposition of William Browne in which he admitted not reading the NYIE Constitution, which defines Security Fund and Deposit Fund, and in which he admitted that at the time of the transaction he was aware that the Funds were separate, distinct entities. Deposition of William Browne, at 59, line 13. At his deposition, Mr. Browne could not specifically identify any basis for believing that defendant was mistaken about the meaning of "Security Fund." Mr. Browne stated that he expressed his intent—presumably that the indemnification clause would preserve the "dollar for dollar" exchange of assets—at a meeting attended by representatives of the defendant. Browne Deposition at 89, lines 1–5. Browne, however, could not identify when or where this meeting was held, who at-

**6.** One reason that the acquisition of Dorinco was more economical is that it was approved for membership in the Exchange before July 1, 1985, when an underwriting syndicate was only required to have an initial paid-in capital and surplus of $3,550,000 and to maintain a minimum policyholder surplus of $2,200,000 to write all kinds of insurance, except life insurance and annuities. Any new syndicate would be obligated to meet minimums of $5,000,000 and $3,000,000, respectively.

tended or to whom he expressed his intent. When pressed on such specifics, he responded that he could not recall. He also admitted missing meetings and not being certain which meetings he attended after the initial meeting between the parties. *See* Browne Deposition at 19, lines 14–18; *id.* at 23, lines 14–15. Furthermore, Browne admitted that plaintiff lacked any documentation of what was discussed at these meetings that would either refresh his recollection or support his contention as to what was represented. *See, e.g.,* Browne Deposition at 25, lines 24–25; *id.* at 26 at 3–8. The absence of any credible evidence that defendant may have intended the broader indemnity agreement now sought by plaintiff defeats the claim of mutual mistake. *See John Hancock Mutual Life v. Carolina Power & Light,* 717 F.2d 664, 671 (2d Cir.1983) (party seeking reformation could not show mutual mistake without showing that other party did not intend exactly what is written in the contract).

In *Sutton Hill Associates v. Cotter,* this Court recently applied the standard in *Chimart* to dismiss a reformation claim on summary judgment because the party claiming reformation could not satisfy the heightened burdens of proof. *Sutton Hill Associates v. Cotter,* 705 F.Supp. 940, 950 (S.D.N.Y.1989). In this action, the plaintiff relies almost entirely on the Browne affidavit, which provides a questionable basis for finding mistake on behalf of plaintiff and no viable basis to rebut defendant's allegation that the indemnity agreement it intended is reflected in § 6.06.

Applying the standards reaffirmed in *Chimart Associates* to this action, this Court also concludes that plaintiff fails to meet its burden to rebut the "heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties." *Chimart Associates, supra,* 498 N.Y.S.2d at 347, 489 N.E.2d at 234 (citations omitted). In *Chimart Associates* the Court concluded that "[i]t was uncontroverted that the negotiations had been conducted by sophisticated, counseled businessmen, and the undisputed evidence showed that the unam-

biguous language reflected precisely what the moving party intended." *Id.* at 347, 489 N.E.2d at 234. The Court notes that plaintiff was represented by well-respected counsel in these negotiations. Absent compelling evidence of mutual mistake, this Court is hesitant to re-write the written agreement. Since plaintiff has not demonstrated evidence from which one might reasonably infer mutual intent, there is no genuine issue that would preclude granting summary judgment for the defendant. Consequently, this Court grants defendant's motion for summary judgment, dismissing count two.

Defendant's Motion for Sanctions

Defendant moves to strike from the Browne affidavit the mention of an unaccepted offer of settlement, which defendant argues was submitted in bad faith and in violation of Fed.R.Evid. 408 and Fed.R. Civ.P. 11, 56(g). Plaintiff responds that this inclusion was inadvertent, but not in bad faith.

This Court has not considered this improper mention of a settlement proposal and does not find that sanctions would be appropriate under the circumstances. Therefore, defendant's motion for sanctions is denied.

CONCLUSION

For the aforementioned reasons, plaintiff's motion for summary judgment is denied, while defendant's cross-motion for summary judgment dismissing the complaint is granted. Defendant's motion for sanctions is denied.

SO ORDERED.