■ CHEMICAL BANK, Appellant, v FRIEDMAN & SHAFTAN, P. C., et al., Respondents.—Order, Supreme Court, New York County (David H. Edwards, Jr., J.), entered April 24, 1989, which granted defendants' motion for reargument, and, upon reargument, vacated a judgment of the same court, entered December 9, 1988, awarding plaintiff $610,483.64, inclusive of interest, costs and disbursements, against defendants, is unanimously reversed, on the law, the motion for reargument is denied, and the judgment reinstated, with leave to plaintiff to have interest recomputed in accordance with the terms of the two promissory notes, with costs.

Two notes are sued upon in this action by a bank against a law firm-professional corporation and one of its members who guaranteed the firm's payment of the notes. One note is dated October 18, 1984, calls for payment of $500,000 over seven years in equal monthly installments, and provides as an event of default the firm's default on any other note or agreement with the bank. The other note is dated March 10, 1986, and calls for payment of $250,000 90 days later on June 9, 1986. Claiming a default in the payment of the $250,000 note,

plaintiff seeks to recover the principal unpaid balance on both notes with interest. The opposition is to the effect that there was in fact no default since the $250,000 note was not, contrary to its tenor, payable in 90 days.

According to defendants, the two notes actually represent a single loan of $750,000 for which the firm applied in the summer of 1984 in order to finance construction of its new office. However, instead of a "long term monthly payout" of $750,000, the bank, for its own internal purposes, structured the loan in two parts, the first an "installment loan" of $500,000 payable over seven years, and the second a "standing loan of $250,000 set up in the form of a three-month Demand Note" to be · "automatically renewable for so long as the monthly installment payments were regularly made on the $500,000 portion of the loan." But for this oral understanding, defendants say, they would not have made and guaranteed the 90-day note. The understanding is said to be corroborated by plaintiff's conduct in rolling over and renewing the 90-day note "on each and every occasion over th[e] three-year period" from the summer of 1984, when the loan was made, to October 1987, when plaintiff declared it to be in default.

In reply, plaintiff denied any such oral understanding; asserted that the two loans were completely separate transactions, the $500,000 being for construction of defendants' new office and the $250,000 being for "working capital" needed by defendants to carry them through a short-term period of poor cash flow; demonstrated, through documentary evidence not refuted in defendants' surreply, that the $250,000 loan was first extended under a 90-day note dated September 9, 1985, 11 months after the $500,000 note was signed (and 13 months after the $500,000 was actually given to defendants), which note was replaced by a second 90-day note on December 10, 1985, and then by a third on March 10, 1986—two renewals over a nine-month period; and also demonstrated that plaintiff began collection efforts in earnest very soon after this last note fell due on June 9, 1986, although it did not actually declare a default until October 1987, when it concluded that further "workout negotiations" with defendants, looking toward periodic payments of principal on the $250,000 note, would not be fruitful. (Although defendants' opposition does not indicate whether interest was to be paid on the $250,000 portion of loan during the seven-year payout period of the $500,000 portion, it appears from documentary evidence in plaintiff's reply that monthly payments of interest were made

until September 1986 in accordance with the interest clause of the 90-day notes.)

Characterizing defendants' alleged oral understanding as "unsubstantiated", "bald", "flatly contradicted by the documentary evidence", and insufficient to raise "genuine issues of fact", and also invoking the parol evidence rule, plaintiff moved for summary judgment. At first, IAS agreed with plaintiff, granting it summary judgment upon a finding that "defendants' conclusory allegation of oral assurances and representations regarding the loans are insufficient to raise a valid defense to enforcement of the notes according to their written terms." However, upon defendants' motion for reargument, IAS reversed itself, finding that "the allegations made by defendants are sufficiently detailed to raise an arguable issue" as to whether "the contract is voidable because of fraud". Appealing the order granting reargument, plaintiff appears to accept that the parol evidence rule is avoided by a characterization of the defense as one for fraud, and argues mainly that the "fraudulent representations alleged" are "unsubstantiated", "inherently incredible", "not genuine" and "feigned". We agree.

Defendants assert that the two notes actually represent a single loan of $750,000 that plaintiff, for its own unspecified internal purposes, split up into two parts—one part, for $500,000, to be paid in monthly installments of principal and interest, and the other part, for $250,000, not requiring any payments at all (at least of principal, although even payment of interest is not to be adduced from defendants' papers) as long as the monthly payments on the $500,000 loan were kept current. Nowhere, however, do defendants explain why the two notes were made 11 months apart, an evasion which makes their claim that the notes really represent but a single loan seem too equivocal, and too far removed from actual appearances, to defeat summary judgment (see, Chimart Assocs. v Paul, 66 NY2d 570, 574-575). But even if the two notes had been made at or about the same time, it still would be difficult to accept that anyone with the least degree of sophistication, least of all a lawyer, would sign a note by its terms payable in 90 days if payment was not actually meant to be made for seven years. And, if some aspects of defendants' argument seem evasive and incredible, other aspects seem simply disingenuous. The $250,000 loan was not, as defendants represent, automatically rolled over and renewed "on each and every occasion" it fell due over the three-year period between the summer of 1984 and October 1987; uncontro-

verted documentary evidence shows that it was only first extended in September 1985, and then renewed only twice, in December 1985 and March 1986, giving defendants a total of nine months instead of three to repay the loan. Also, defendants' assertion that plaintiff "without any other prior notice or warning of any kind, precipitately placed us in default" is utterly discredited by compelling evidence in plaintiff's reply, not addressed in defendants' surreply, showing that repeated demands for payment and warnings of a forthcoming declaration of default were given by plaintiff beginning very soon after the 90-day note fell due and ending very soon before the default was declared, with the first of many meetings to discuss a workout being held on September 3, 1986, and the first of many letters notifying defendants of plaintiff's position being sent on December 17, 1986. Nothing about plaintiff's conduct corroborates the oral agreement alleged by defendants, and there are no genuine issues of fact to be tried. Concur—Murphy, P. J., Ross, Asch and Wallach, JJ.