■ In the Matter of the Estate of CECILE SHEREZ, Deceased. CAROLE ISOLDI, Respondent-Appellant; HARRY SHEREZ, Appellant-Respondent. [622 NYS2d 526] —In a proceeding pursuant to SCPA 2103, Harry Sherez appeals from an order of the Surrogate's Court, Kings County (Bloom, S.), dated July 6, 1993, which, *inter alia,* directed him to execute all documents necessary to transfer ownership of certain designated securities to the petitioner and denied his cross petition, *inter alia,* to direct the petitioner to return to him certain designated securities, and the petitioner cross-appeals from so much of the same order as denied that branch of her petition which was for an award of attorney's fees, costs, and disbursements.

Ordered that the order is modified, on the law, by deleting the first, second, third, fourth, and fifth decretal paragraphs thereof and substituting therefor a provision granting those branches of the cross petition which were to direct the petitioner to return to Harry Sherez those securities identified in exhibit 2 of the cross petition and Municipal Assistance Corporation for the City of New York Certificate Nos. 4R-800 and 4R2495; as so modified, the order is affirmed insofar as appealed and cross-appealed from, with costs to the appellant.

We are in agreement with the Surrogate's Court that the language of the stipulation between Harry Sherez and the decedent is clear and unambiguous on its face. However, the interpretation urged by the petitioner and adopted by the Surrogate's Court renders that language meaningless. Pursuant to section 2 (a) of article V of the stipulation, the decedent was to receive certain identified, jointly-owned, bearer bonds in the amount of $35,000, and joint bank deposits in the amount of $5,000. This section goes on to provide that Harry Sherez "shall retain * * * all other investments, bonds, and the like". Section 2 (b) of article V states, in relevant part, "that there may presently be other investment assets jointly held or jointly titled assets in the possession of the other party". These "other investment assets" would become the

sole property of the party in possession of them upon the execution of the stipulation. However, all "bonds and the like", such as the disputed securities, were made sole property of Harry Sherez pursuant to section 2 (a), except for the bearer bonds and bank deposits identified therein. Whatever investments the *"other* investment assets" (emphasis added) language of section 2 (b) referred to, it clearly did not cover "bonds and the like". The petitioner's argument that section 2 (b) referred to the bonds and other securities which the decedent removed from the parties' safe deposit box would render meaningless the clear language of the section 2 (a). In contrast, when the language of section 2 (b) is given its plain meaning, it clearly refers to investment assets other than those already disposed of by section 2 (a). It is a basic tenet of contract construction that an interpretation which avoids inconsistencies and gives meaning to all of an agreement's provisions is favored *(see, Bed N' Bath v Spring Val. Partnership,* 185 AD2d 584; *Mir v Mir,* 135 AD2d 690; *Klestinec v Thruway Terms.,* 124 AD2d 988).

Since the relevant language of the stipulation is not reasonably susceptible to more that one interpretation, and is clear and unambiguous on its face, the court may not resort to extrinsic evidence of the parties' intent *(see, Chimart Assocs. v Paul,* 66 NY2d 570, 572; *Slatt v Slatt,* 64 NY2d 966).

In view of the foregoing, we need not reach the parties' remaining contentions. Thompson, J. P., Copertino, Pizzuto and Goldstein, JJ., concur.