Securitized Asset Funding 2011-2, Ltd. v Canadian Imperial Bank of Commerce (2018 NY Slip Op 08444)





Securitized Asset Funding 2011-2, Ltd. v Canadian Imperial Bank of Commerce


2018 NY Slip Op 08444


Decided on December 11, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 11, 2018

Sweeny, J.P., Renwick, Mazzarelli, Oing, Moulton, JJ.


7850 653911/15

[*1]Securitized Asset Funding 2011-2, Ltd., Plaintiff-Appellant,
v
Canadian Imperial Bank of Commerce, Defendant-Counterclaim Plaintiff-Respondent, 
Securitized Asset Funding 2011-2, Ltd., et al. Counterclaim Defendants-Appellants.


Selendy & Gay PLLC, New York (Philippe Z. Selendy of counsel), for appellants.
Skadden, Arps, Slate, Meagher & Flom LLP, New York (Jay B. Kasner of counsel), for respondent.



Order, Supreme Court, New York County (Saliann Scarpulla, J.), entered on or about April 6, 2018, which, insofar as appealed from, denied plaintiff and counterclaim defendants' motion for summary judgment on liability and dismissing defendant's counterclaims for a declaratory judgment, mutual mistake, and unilateral mistake, unanimously affirmed, without costs.
This is an action for breach of two contracts, the A Note and the B Certificate. These contracts refer to certain credit default swap agreements, which refer to notes collateralized by mortgage-backed securities issued by nonparty Altius IV Funding, Ltd. (the Altius IV notes). Defendant Canadian Imperial Bank of Commerce (CIBC) had entered into credit default swaps with a purchaser of Altius IV notes seeking to protect its investment therein. CIBC then entered into the A Note and later the B Certificate with plaintiff and counterclaim defendants (all affiliates of Cerberus Capital Management, L.P., and hereinafter, collectively, Cerberus) to reduce its exposure on the credit default swaps. CIBC issued the original A note in exchange for a loan to be repaid in four monthly payments streams based on the performance of specified assets. The B Certificate provided an additional loan to CIBC in exchange for its agreement to make certain payments to Cerberus if the A Note were repaid or terminated.
As relevant here, the "Synthetic Assets" generated three payment streams: the Synthetic Asset Interest Proceeds Amount (Synthetic Interest), the Synthetic Asset LIBOR Amount (Synthetic LIBOR), and the Synthetic Asset Principal Proceeds Amount (Synthetic Principal).
We agree with the motion court that the relevant Synthetic Assets under the A Note and B Certificate are the Altius IV swaps, not the Altius IV notes. We also agree that the termination of the Altius IV notes does not affect Cerberus's right to payment under the A Note and B Certificate. That payment depends on the terms of the Altius IV swap documents, which do not depend on whether or not the Altius IV notes have been terminated. We further agree that Cerberus was entitled to Synthetic LIBOR even after the Altius IV swaps were terminated.
Unlike the motion court, we find that the terms "Relevant Notional Amount" and "Scheduled Payments" are not ambiguous (see Chimart Assoc. v Paul, 66 NY2d 570, 573 [1986]). Cerberus's interpretation of the terms, which is based on the plain language of the contract, is reasonable. CIBC's interpretation — that Scheduled Payments include payments of Synthetic Principal and proceeds from the liquidation of the Altius IV notes — is unmoored from [*2]the contractual language.
Nevertheless, we affirm the denial of Cerberus's motion, because CIBC's defenses and counterclaims raise triable issues of fact (see Granite State Ins. Co. v Transatlantic Reins. Co., 132 AD3d 479, 483 [1st Dept 2015]). For example, the second counterclaim seeks to reform the A Note and B Certificate based on mutual mistake. Although the counterclaim does not "show in no uncertain terms ... exactly what was really agreed upon between the parties" (Chimart, 66 NY2d at 574 [internal quotation marks omitted]; see CPLR 3016[b]), the affirmations that CIBC submitted in opposition to Cerberus's motion show that — according to CIBC — the parties agreed that the Relevant Notional Amount for the Altius IV synthetic assets would be reduced by payments of Synthetic Principal. Viewed in the light most favorable to CIBC (the nonmovant), the evidence shows that, for more than four years, between June 2010 and October 2014, the parties reduced the Relevant Notional Amount of the Altius IV synthetic assets by CIBC's payments of Synthetic Principal (see Gulf Ins. Co. v Transatlantic Reins. Co., 69 AD3d 71, 85 [1st Dept 2009]). A factfinder could reasonably conclude that a sophisticated financial entity such as Cerberus, which was reviewing monthly reports about the reduction of the Relevant Notional Amount, had some "internal controls . . . to ensure that the substantial amounts it receive[d] . . . [were] consistent with the terms of the underlying contracts" (id. at 87).
The fact that the A Note and B Certificate contain merger/ integration and no-waiver clauses does not foreclose CIBC's reformation counterclaim (see Chimart, 66 NY2d at 573; Aiello v Burns Intl. Sec. Servs. Corp., 110 AD3d 234, 245 [1st Dept 2013]).
Cerberus contends that CIBC's counterclaim for reformation or rescission of the B Certificate based on unilateral mistake plus fraud should be dismissed because CIBC cannot establish justifiable reliance. However, the issue of reasonable reliance is not subject to summary disposition (see e.g. Brunetti v Musallam, 11 AD3d 280, 281 [1st Dept 2004]).
Because Cerberus is not entitled to summary judgment on its claims for breach of the A Note and B Certificate, it is not entitled to summary judgment dismissing CIBC's counterclaim for a declaratory judgment.
Summary judgment was also correctly denied because discovery had not been completed (see Groves v Land's End Hous. Co., 80 NY2d 978 [1992]) and CIBC's defense of estoppel raises issues of
fact (see Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 107 [2006]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 11, 2018
CLERK