Stache Invs. Corp. v Ciolek (2019 NY Slip Op 05856)





Stache Invs. Corp. v Ciolek


2019 NY Slip Op 05856


Decided on July 31, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 31, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: PERADOTTO, J.P., LINDLEY, DEJOSEPH, TROUTMAN, AND WINSLOW, JJ.


264 CA 18-01062

[*1]STACHE INVESTMENTS CORPORATION, PLAINTIFF-RESPONDENT,
v
LEONARD J. CIOLEK, DEFENDANT-APPELLANT. 






JOSEPH G. MAKOWSKI, LLC, BUFFALO (JOSEPH G. MAKOWSKI OF COUNSEL), FOR DEFENDANT-APPELLANT.
PHILLIPS LYTLE LLP, BUFFALO (DAVID J. RUDROFF OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Erie County (Henry J. Nowak, Jr., J.), entered April 19, 2018. The judgment awarded plaintiff money damages. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law without costs and the motion is denied.
Memorandum: Defendant appeals from a statement for judgment awarding plaintiff damages in the amount of $524,617.31, which was the balance due on a promissory note executed by the parties. Upon our review of the judgment, we conclude that Supreme Court erred in granting plaintiff's motion for summary judgment in lieu of complaint pursuant to CPLR 3213, and we therefore reverse and, in accordance with CPLR 3213, "the moving and answering papers shall be deemed the complaint and answer, respectively."
Plaintiff met its initial burden on the motion by submitting the promissory note, which had extended a line of credit to defendant in an amount up to $600,000.00; a pledge and security agreement (pledge), which provided, inter alia, security for the payment and performance of defendant's obligations under the note; and evidence of defendant's default (see Birjukow v Niagara Coating Servs., Inc., 165 AD3d 1586, 1586-1587 [4th Dept 2018]; Sandu v Sandu, 94 AD3d 1545, 1546 [4th Dept 2012]). In opposition to the motion, however, defendant raised a triable issue of fact by submitting evidence of a " bona fide defense of the note,' " i.e., a mutual mistake (Sandu, 94 AD3d at 1546).
It is well established that, "[w]here a written agreement between sophisticated, counseled business[persons] is unambiguous on its face, one party cannot defeat summary judgment by a conclusory assertion that, owing to mutual mistake . . . , the writing did not express his [or her] own understanding of the oral agreement reached during negotiations" (Chimart Assoc. v Paul, 66 NY2d 570, 571 [1986]). "In the proper circumstances, mutual mistake . . . may furnish the basis for reforming a written agreement . . . In a case of mutual mistake, the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement" (id. at 573). Stated differently, "[w]hen an error is not in the agreement itself, but in the instrument that embodies the agreement, equity will interfere to compel the parties to execute the agreement which they have actually made, rather than enforce the instrument in its mistaken form" (EGW Temporaries, Inc. v RLI Ins. Co., 83 AD3d 1481, 1482 [4th Dept 2011] [internal quotation marks omitted]). "Because the thrust of a reformation claim is that a writing does not set forth the actual agreement of the parties, generally . . . the parol evidence rule . . . [does not] appl[y] to bar proof, in the form of parol or extrinsic evidence, of the claimed agreement" (Chimart Assoc., 66 NY2d at 573). Nevertheless, "there is a heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties' . . . and a correspondingly high order of evidence is required to overcome that [*2]presumption" (id. at 574). "The proponent of reformation must show in no uncertain terms, not only that mistake . . . exists, but exactly what was really agreed upon between the parties' " (id.).
Here, in opposition to the motion, defendant submitted the affidavit of the former chief investment officer (CIO) of plaintiff, who was "responsible for making investment decisions [for plaintiff], which included negotiating and entering into a loan transaction in February 2014 with [defendant]." In his affidavit, the CIO stated that he and defendant "discussed and agreed" that plaintiff's right to secure repayment of the loan would be limited to defendant's stock interest in a certain corporation. In other words, the parties intended to create a "non-recourse" loan and under no circumstances was it the intention of the CIO or plaintiff to require defendant to personally repay the note independent of his stock interest. Defendant also submitted his own affidavit, in which he stated nearly the same understanding of the agreement as that of the CIO. Despite the mutual understanding between the CIO and defendant, the plain and unambiguous language of the note and pledge do not support defendant's non-recourse, i.e., sole remedy, understanding of the agreement.
Unlike in Chimart Assoc., defendant here set forth, in detail, the basis for his contention that both parties reached an agreement different from that set forth in the note. The affidavits of the CIO and defendant contain the identical assertion that both parties—plaintiff via the CIO and defendant—agreed that plaintiff's right to secure repayment of the loan would be limited to defendant's stock interest (cf. id. at 574-575). The affidavits of the CIO and defendant are based upon personal knowledge and state in detail their understanding of the negotiations and the resulting agreement. Moreover, the CIO averred that he negotiated the loan on behalf of plaintiff at the time he was its chief investment officer, and he concluded that the terms of the note did not reflect what the parties had intended. Thus, in opposition to plaintiff's motion, we conclude that defendant submitted the requisite "high level" of proof required to raise a triable issue of fact regarding mutual mistake.
We respectfully disagree with our dissenting colleague and her suggestion that the affidavits of the CIO and defendant were unsubstantiated. Documentary evidence is not required. Rather, as noted, defendant was required to submit "a high level' of proof in evidentiary form" that raised a triable issue of fact (id. at 574), which defendant did here. Nor do we agree that the affidavit of the CIO is inconsistent. " It is . . . well established that [a summary judgment] motion should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility' " (Katz v Beil, 142 AD3d 957, 964 [2d Dept 2016]; see Meyer v University Radiology, 133 AD3d 1307, 1308 [4th Dept 2015]). At best, the fact that the CIO may not have read the note, or after reading it failed to object, raises an issue of fact whether he diligently performed his duties as plaintiff's chief investment officer. It does not, however, make his position inconsistent. The CIO very clearly and consistently stated that, "[i]n entering into the loan transaction in February 2014, [he] and [defendant] discussed and agreed that [plaintiff's] right to secure repayment of the loan would come solely from [defendant's] 20% stock interest in [the relevant corporation] by the reduction of his share interest in the company . . . The loan by [plaintiff] to [defendant] was a non-recourse loan . . . [Plaintiff] could only look to [defendant's] 20% ownership interest in [the corporation] to repay the [note]." Lastly, the court and our dissenting colleague list several points that were not addressed in the affidavits of either the CIO or defendant. "Issue finding rather than issue determination is the function of the court on a motion for summary judgment" (Powell v Tarantino Foods, 234 AD2d 989, 989 [4th Dept 1996]). Similarly, it is not the function of the court to determine what could have or should have been provided to raise a triable issue of fact. Instead, it is the function of the court to determine whether what has been provided is sufficient to raise a triable issue of fact.
All concur except Peradotto, J.P., who dissents and votes to affirm in the following memorandum: I respectfully dissent because I cannot agree with the majority's conclusion that defendant's submissions in opposition are sufficient to defeat plaintiff's motion for summary judgment. I would therefore affirm.
Defendant entered into a line of credit note (note) whereby plaintiff extended $600,000 in credit to defendant and defendant thereafter borrowed just over $518,000 for the construction of a residential home. In addition to the note, defendant also executed a pledge and security agreement (pledge), in which he pledged as collateral for the line of credit his shares of stock in a [*3]corporation. The plain language of the note and the pledge (collectively, agreement) unambiguously provided that, upon default, the outstanding principal and accrued interest together with any additional amounts payable could be accelerated and become immediately due and payable at plaintiff's option, that plaintiff could exercise any of the rights and remedies under the agreement or applicable law, and that plaintiff's rights and remedies were cumulative and not exclusive of any others under the agreement or applicable law.
Defendant defaulted on a debt of principal and accrued interest totaling over $524,000. After defendant failed to comply with a demand for payment made a few years later, plaintiff moved for summary judgment in lieu of complaint pursuant to CPLR 3213 seeking judgment totaling approximately $607,000, i.e., the principal with additional accrued interest. It is undisputed that plaintiff met its initial burden on the motion.
In opposition, defendant contended that there was a mutual mistake present in the agreement, namely, that both parties had intended the agreement to constitute a "non-recourse" loan in which plaintiff's remedy for collecting on the note would be limited solely to "the valuation and appropriate reduction" of defendant's relevant stock ownership, and that under no circumstances was the intention to allow plaintiff to seek repayment from defendant personally independent of his stock ownership. Defendant submitted his own affidavit, which was materially the same as the affidavit he submitted from plaintiff's former chief investment officer (CIO). The CIO averred that, during his former employment, he was "responsible for making investment decisions for [plaintiff], which included negotiating and entering into [the subject] loan transaction." According to the CIO, he and defendant discussed and agreed that plaintiff's right to secure repayment of the loan would be limited to defendant's stock interest in the corporation. The agreement constituted a non-recourse loan in which plaintiff could use defendant's stock ownership to repay the note or, alternatively, defendant could pay the note when due in order to preserve his stock ownership. The CIO averred that he stated as much to defendant and that under no circumstances was it his or plaintiff's intention to require defendant to personally repay the note independent of his stock interest. The CIO further averred that, "[i]n connection with the loan, at [his] request [plaintiff's] outside legal counsel . . . drafted the loan documents." The CIO concluded that, "[t]o the extent that [plaintiff] maintains in this action that the [n]ote provides that [plaintiff's] right to repayment of the loan was not limited solely to the reduction of [defendant's] shares . . . , this was a mistake in drafting by [plaintiff's] outside counsel."
Supreme Court granted plaintiff's motion upon determining in its written decision that defendant's submissions were insufficient in several respects.
"Where a written agreement between sophisticated, counseled business[persons] is unambiguous on its face, one party cannot defeat summary judgment by a conclusory assertion that, owing to mutual mistake or fraud, the writing did not express his [or her] own understanding of the oral agreement reached during negotiations" (Chimart Assoc. v Paul, 66 NY2d 570, 571 [1986]). "[T]here is a heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties' . . . , and a correspondingly high order of evidence is required to overcome that presumption" (id. at 574). Thus, "a party resisting pretrial dismissal of a reformation claim [must] tender a high level' of proof in evidentiary form" (id.). Evidence that "is conclusory, unsubstantiated, and internally inconsistent in a manner that appears designed to raise feigned factual issues in an effort to avoid the consequences' of [an] otherwise valid motion for summary judgment" is insufficient to raise a triable issue of fact (Birjukow v Niagara Coating Servs., Inc., 165 AD3d 1586, 1587 [4th Dept 2018]).
I agree with plaintiff for the reasons that follow that, contrary to the majority's conclusion, the court properly determined that defendant's submissions in opposition fall short of the requisite high level of proof needed to defeat plaintiff's motion.
First, the CIO's affidavit is inconsistent. The CIO asserted that he was "responsible for . . . negotiating and entering into [the subject] loan transaction" and had the agreement drafted by outside counsel "at [his] request," but that the agreement did not reflect his intentions. Thus, either the CIO failed to read the agreement drafted at his request by outside counsel, which is inconsistent with his claimed responsibilities of negotiating and entering into the transaction, or [*4]he read the agreement and did not object thereto upon determining that the unambiguous language reflected his intentions, which is inconsistent with the representations he now claims to have made to defendant.
Second, the affidavits are unsubstantiated. As the court observed, neither the CIO nor defendant submitted any documentary evidence to substantiate their purported intention to limit plaintiff's remedies (see Bell v Marine Midland Banks, 230 AD2d 758, 759 [2d Dept 1996], lv denied 89 NY2d 808 [1997]). Thus, the affidavits provide little more than vague and unsubstantiated allegations regarding terms that are different than those reflected in the unambiguous, plain language of the agreement (see South Fork Broadcasting Corp. v Fenton, 141 AD2d 312, 314 [1st Dept 1988], lv dismissed 73 NY2d 809 [1988]).
Third, the affidavits do not attempt to explain the abovementioned inconsistencies and are conclusory with respect to how the alleged mutual mistake supposedly arose. As the court properly noted, the CIO did not specify what instructions he provided to outside counsel regarding the drafting of the agreement, the CIO and defendant did not explain how the drafted agreement excluded the allegedly agreed-upon limitation of plaintiff's remedies, they did not address whether they read the agreement when they received it from outside counsel, and they did not explain how they missed such a significant change from their alleged intentions if they had read the agreement. Nor did the affidavits explain how the purported mutual mistake went undiscovered until after the default and the commencement of litigation. Instead, the CIO and defendant set forth unsubstantiated allegations of prior communications between them and then concluded, without any further explanation, that the agreement reflected a mistake in drafting by outside counsel. I note also that, contrary to defendant's contention, the observations by the court with respect to the affidavits do not constitute improper credibility determinations; rather, by evaluating what was included in and excluded from the affidavits, the court properly performed its function on a summary judgment motion to determine whether there was sufficient proof in evidentiary form to raise a triable issue of fact (see generally Montas v JJC Constr. Corp., 92 AD3d 559, 560 [1st Dept 2012], affd 20 NY3d 1016 [2013]).
Finally, although the CIO's employment as an officer of plaintiff who purportedly negotiated and entered into the agreement may factually distinguish this case from those involving a mere unilateral mistake, his former position with plaintiff does not remedy any of the abovementioned substantive deficiencies in his affidavit, which is "conclusory, unsubstantiated, and internally inconsistent in a manner that appears designed to raise feigned factual issues in an effort to avoid the consequences' of [an] otherwise valid motion for summary judgment" (Birjukow, 165 AD3d at 1587). By accepting the affidavits submitted in opposition to the motion here as sufficient to raise an issue of fact, the majority dilutes the "high order of evidence" required to overcome the " heavy presumption that a deliberately prepared and executed written instrument manifest[s] the true intention of the parties' " (Chimart Assoc., 66 NY2d at 574).
Entered: July 31, 2019
Mark W. Bennett
Clerk of the Court