Tiozzo v Dangin (2021 NY Slip Op 04739)





Tiozzo v Dangin


2021 NY Slip Op 04739


Decided on August 19, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 19, 2021

Before: Acosta, P.J., Kapnick, Moulton, Scarpulla, JJ. 


Index No. 157303/19 Appeal No. 14163 Case No. 2020-03575 

[*1]Laura Tiozzo, Plaintiff-Appellant,
v
Pascal Dangin, Defendant, Lenz Capital Group LLC, Defendant-Respondent.


Kilhenny & Felix, Scarsdale (James M. Felix of counsel), for appellant.
Shanker Law Group, Mineola (Michael L. Shanker of counsel), for respondent.



Order, Supreme Court, New York County (Lynn R. Kotler, J.), entered September
15, 2020, which, insofar as appealed from as limited by the briefs, denied plaintiff's
motion for summary judgment on the first, second, and third causes of action to the
extent they seek declarations that plaintiff has a 100% equitable interest in the subject real property resulting from her divorce judgment with defendant Pascal Dangin, and an injunction barring Dangin and defendant Lenz Capital Group LLC from all claims to an estate or interest in the property, and from creating, perfecting or enforcing any lien against the property, unanimously reversed, on the law, without costs, and the motion granted. Tiozzo and Dangin married in 1994. In 1996 Tiozzo gave birth to the only child of the marriage. In 2003 Tiozzo and Dangin purchased condominium apartment 5A at 99 Jane Street (the subject property). The purchase was funded by a mortgage in excess of $830,000.
In 2004 the parties entered into a stipulation of divorce, which was incorporated by reference, but not merged in, the parties' judgment of divorce entered November 17, 2004. In the stipulation of divorce the parties agreed, inter alia, to the division of property. Dangin obtained, among other things, full ownership rights to Box Services, LLC, a company that held several patents and paid income to him, as well as sole ownership and exclusive use and occupancy of a residential property in Amagansett, in Suffolk County, which had a then fair market value of $1,756,900, with mortgages totaling $1,250,000.
The stipulation of divorce provided that Tiozzo "shall be entitled to sole ownership and exclusive use and occupancy" of the subject property, and that Dangin "shall" pay the mortgage. However, Dangin would provide a quitclaim deed to Tiozzo only if doing so would not jeopardize the existing mortgage. Paragraph 13(b) of the stipulation of divorce provides:
"The parties agree that the Wife [Tiozzo] shall be entitled to sole ownership and exclusive use and occupancy of the Jane Street property. The parties further agree that the Husband [Dangin] shall solely be responsible for and shall continue to make all of the mortgage payments on the Jane Street property pursuant to the terms of the existing mortgage until said mortgage is fully satisfied. It is the intention of the parties that the Wife have sole legal title to the Jane Street property. Husband shall promptly execute and cause to be promptly recorded a quitclaim deed to the Wife provided such execution and/or recording does not cause a termination or modification of the terms of the existing mortgage. In the event that the Husband is unable, for any reason, to execute and/or record such quitclaim deed, the Husband agrees and covenants that notwithstanding the joint ownership of the Jane Street property, he will not act in any way or manner or through any deed or omission, whether directly or
indirectly, to interfere with the Wife's exclusive [*2]use and occupancy of the said property, including the sale of the said property by the Wife should she so choose. In the event that the Wife elects to sell the property, the Husband shall continue to make monthly payments to the Wife in the amount of the mortgage payments in effect at the time of such sale on the same terms and conditions of said mortgage, until the Wife has received that amount of money equal to the pay-off amount of the mortgage in effect on the closing date of the sale of the Property. The Husband may prepay the amount of the mortgage on Jane Street property at any time."
Tiozzo did not demand a quitclaim deed from Dangin until 2019, nearly 15 years after the divorce became final. Both parties aver that the reason she did not do so was to preserve the existing mortgage on the subject property, as contemplated by the stipulation of divorce. In response to Tiozzo's demand, Dangin refused to provide a quitclaim deed. Tiozzo's and Dangin's names both remain on the deed.
Tiozzo's demand for a quitclaim deed from Dangin was precipitated by her decision to sell the subject property. Tiozzo asserts that her decision to sell was caused by Dangin's failure to make mortgage payments and to comply with other financial obligations not at issue here.
At some point Tiozzo became aware that Dangin had executed a confession of judgment in favor of Lenz Capital Group, LLC (Lenz). This confession of judgment arose from Dangin's default on two promissory notes that were secured by the Amagansett property that Dangin received pursuant to the stipulation of divorce. Lenz began a foreclosure proceeding which ended in a settlement allowing for the sale of the Amagansett property. The sale partially satisfied Dangin's debt to Lenz. The settlement agreement provided that Dangin would pay the unpaid portion of his debt to Lenz in installments, and, if he failed to do so, would execute a confession of judgment in Lenz's favor. Dangin defaulted on his installment agreement, and on December 7, 2018, he signed a confession of judgment in Lenz's favor in the amount of $1,948,909.50. Lenz entered judgment for that amount in New York County in February 2019.
In July 2019 Tiozzo brought the instant action, asserting, as is relevant to this appeal, that she has a 100% equitable interest in the subject property and that the Lenz judgment against Dangin is of no legal effect against that property.
Tiozzo moved for summary judgment, which was opposed by both Dangin and Lenz. Dangin cross-moved, as relevant here, for summary judgment dismissing as time-barred or waived the first and second causes of action (which seek, inter alia, declarations that Tiozzo is the sole equitable owner of the subject property), and her third cause off action (which seeks a permanent injunction preventing Dangin or Lenz from placing a lien on the subject property).
Supreme Court denied both motions. As relevant here, the court found that Tiozzo's first three causes [*3]of action were not time-barred or waived, as the stipulation of divorce had no deadline by which Tiozzo had to demand the quitclaim deed. It is undisputed that Tiozzo did not demand a quitclaim deed until 2019, and that she brought this suit soon after Dangin's refusal to provide one, well within the six-year limitations period for breach of contract actions (CPLR 213[2]). However, the court also denied Tiozzo's motion, finding issues of fact as to whether Tiozzo asked Dangin not to issue a quitclaim deed, and as to whether Tiozzo's conduct constituted laches or unclean hands, barring her from enforcing the terms of the stipulation of divorce.
We now reverse.
DISCUSSION
Contrary to Supreme Court's finding, there is no need for discovery concerning whether or when there was a request by Tiozzo to Dangin either to execute or to refrain from executing a quitclaim deed transferring to her sole title to the subject property. Tiozzo has conceded that she refrained from obtaining a quitclaim deed in order to avoid a default of certain terms of the mortgage on the subject property, as contemplated by the stipulation of divorce. As there was no deadline for delivery of a quitclaim deed under the stipulation of divorce, the court correctly found that Tiozzo's conduct in this regard would not provide a basis for Lenz to assert a statute of limitations or equitable estoppel defense against Tiozzo's claims.
The remaining question is whether laches or the doctrine of unclean hands bars Tiozzo from exercising her rights under the stipulation of divorce.
Tiozzo relies on the Court of Appeals' decision in Pangea Capital Mgt., LLC v Lakian (34 NY3d 38 [2019]). In Pangea, the divorcing couple entered their judgment of divorce in New York County on June 11, 2015. The judgment incorporated by reference an agreement that settled all issues, including the sale of real property on Shelter Island, in Suffolk County. Under the settlement, the wife was to receive 62.5% of the proceeds of the sale, plus another $75,000, and the husband was to receive the balance. Pangea Capital Management, the husband's former employer, obtained a judgment against the husband in 2016, and it attempted to gain access to the sale proceeds of the Shelter Island property (including the wife's share of those proceeds) by docketing its judgment against the husband in Suffolk County before the wife docketed the judgment of divorce in that county. Pangea argued that the wife was just another judgment creditor and that she was second in line behind Pangea pursuant to CPLR 5203, which provides priority against a judgment debtor's real property to the first entity to docket its judgment in the county where the real property is located.
The Court of Appeals disagreed. It held that under Domestic Relations Law § 236(B)(5)(a) "legal rights to specific marital property vest upon the judgment of divorce, with inchoate rights becoming actual ownership interests by virtue of an equitable [*4]distribution judgment" (Pangea Capital Mgt., 34 NY3d at 43 [internal quotation marks and brackets omitted]). Plaintiff thus argues that her interest in the subject property vested upon the filing of the judgment of divorce.
This case differs from Pangea in that the instant parties provided for (an albeit limited) joint ownership of real property after the divorce. Divorcing couples may of course provide in a judgment of divorce for continued co-ownership of property (see e.g. Ferraro v Janis, 62 AD3d 1059 [3d Dept 2009]). In particular, where there are minor children involved a divorcing couple may decide to continue joint ownership of the former marital home to provide continuity for the children (see 1 New York Matrimonial Law and Practice § 3:32). Here, however, the nature of the ongoing joint ownership was limited and was based solely on the parties' agreement to avoid jeopardizing the existing mortgage on the property. With respect to Tiozzo, Dangin gave up any right to continue to use the property or to share in any proceeds of the sale. He also agreed not to take any action that could interfere with Tiozzo's "exclusive use and occupancy of the said property, including the sale of the said property."
The stipulation of divorce thus divested Dangin of his rights in the subject property. Under CPLR article 52 a judgment creditor may only seek to enforce its money judgment against a judgment debtor's property. "Property" under CPLR 5201(b), whether realty or personalty, is defined broadly as an interest that is present or future, vested or contingent (see 11 Weinstein-Korn-Miller, NY Civ Prac¶ 5201.07 [2d ed 2019]). However, the determining factor as to whether a judgment debtor's interest can constitute property vulnerable to a judgment creditor is whether it "could be assigned or transferred" (CPLR 5201[b]). In the stipulation of divorce Dangin gave up any right to assign or transfer to a third party an interest in the subject property. The subject property is therefore beyond the reach of Lenz (see XL Specialty Ins. Co. v Lakian, 243 F Supp 3d 434, 447-448 [SD NY 2017]; see generally 11 Weinstein-Korn-Miller, NY Civ Prac¶ 5201.07 [2d ed 2019]).
Lenz failed to identify any facts that could undergird a defense based on laches or unclean hands. Under Pangea, Tiozzo's interest in the subject property vested when the judgment of divorce was entered. Her decision to delay her demand for a quitclaim deed from Dangin was pursuant to a right provided to her under the stipulation of divorce. Lenz failed to point to any evidence that Tiozzo somehow slept on her rights or colluded in any way with Dangin to defraud Lenz. Accordingly, Tiozzo is entitled to what she bargained for in settling her divorce: a 100% interest in the subject property that is beyond the reach of Dangin, and of Lenz.
We reject Lenz's argument that the agreement embodied in the stipulation of divorce was only binding on Tiozzo and Dangin and that to the rest [*5]of the world Dangin's continued ownership of the subject property was evinced by the deed. According to Lenz, it relied on the deed in agreeing to the settlement of the foreclosure action. Lenz contends that the deed, which showed that Dangin was "the" owner of the Jane Street apartment, provided proof that Dangin would be able to satisfy the settlement amount he agreed to pay. There are at least two related problems with this argument. First, deeds do not reflect after-acquired encumbrances, liens, or other limitations on an owner's interest in real property. Lenz is silent on what investigation it undertook, if any, to determine whether such limitations on Dangin's interest in the subject property existed. Accordingly, it does not appear that Lenz could reasonably rely on the deed to determine that Dangin's interest in the property was sufficient to cover any default of his settlement agreement with Lenz.
More fundamentally, the deed on its face invites further inquiry. Dangin was not "the" owner of the subject property named in the deed, as Lenz asserts in its brief. Rather he was, with Tiozzo, one of two owners on the deed. The record is silent on whether Lenz inquired about Tiozzo, much less about the two parties' respective interests in the subject property. To be sure, matrimonial judgments are generally not open to public inspection (see Domestic Relations Law § 235), but that did not prevent Lenz from asking Dangin for proof about Tiozzo and the parties' respective interests in the Jane Street apartment.
For the foregoing reasons, Tiozzo is entitled to the declaratory and injunctive relief sought in her first three causes of action.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 19, 2021